## COMMONWEALTH *vs.* ANDREW C. STEVENS.

Middlesex.     February 2, 1891. — March 9, 1891.

Present: FIELD, C. J., C. ALLEN, HOLMES, MORTON, & LATHROP, JJ.

*Intoxicating Liquors — Sale by Servant to Minor — Druggist — Evidence of Number of Sales.*

An employer is not criminally responsible for the illegal sale of intoxicating liquor to a minor by an employee, if the employer's instructions, given in good faith, not to make such sales permit the employee to determine the question of minority from a customer's appearance merely, and the sale is made under an honest but mistaken belief that the minor is an adult.

At the trial of a complaint against a druggist for the unlawful sale of intoxicating liquors to a minor, evidence is competent, on the question of the reasonableness of his precautions to prevent such sales, of the number of sales thereof charged on the defendant's books near the time of the alleged sale.

COMPLAINT charging the defendant with unlawfully selling intoxicating liquors to Mary A. Golden, a minor, on May 29, 1890. At the trial in the Superior Court, before *Pitman, J.,* the jury returned a verdict of guilty; and the defendant alleged exceptions, which, so far as material to the points decided, appear in the opinion.

*F. W. Qua, (W. F. Courtney* with him,) for the defendant.

*A. E. Pillsbury,* Attorney General, (*C. N. Harris,* Second Assistant Attorney General, with him,) for the Commonwealth.

C. ALLEN, J. The defendant was a druggist, and was authorized by his license to sell intoxicating liquors for certain purposes, but not to minors. One of his clerks made a sale to a minor, and the principal question at the trial was whether the defendant was criminally responsible therefor. There was evidence that he had instructed all of his clerks not to make sales to minors, nor, indeed, to any person under twenty-five years of age. The learned judge before whom the case was tried instructed the jury that if they were satisfied that these instructions were given by the defendant, but that the clerks were to determine the question of minority simply from the appearance of the customer, and that the defendant authorized and permitted them to sell without further inquiry if they believed such person to be twenty-five years of age or upwards, and that the clerk who made the sale in this case applied this test, and in good faith sold to this customer, then the defendant would be liable, even if he had no personal knowledge of this sale, because the servant in such case was carrying on the defendant's business in the way he directed, and obeying his instructions; and that under such circumstances the act of the servant would be the act of the master. The correctness of this instruction is the principal question before us.

The question in this precise form has not before arisen, so far as we know. In several cases there has been a consideration of the inferences of agency in making a particular sale, which may be drawn from a general employment to sell liquors in the defendant's place of business, and the effect of such employment in overcoming evidence tending to show that the defendant instructed his servant not to sell to minors, or in leading to the conclusion that such instruction, if given, was not given in good faith. But in these cases the question is not discussed whether

the master would be criminally responsible for a sale made by a clerk to a minor by mistake, under the supposition that the minor was an adult, both master and servant intending in good faith that no sale should be made to a minor. *Commonwealth* v. *Hayes*, 145 Mass. 289. *Commonwealth* v. *Houle*, 147 Mass. 380. *Commonwealth* v. *Rooks*, 150 Mass. 59.

In the case now before us, it was ruled that criminal responsibility on the part of the master exists in a case where the clerks were expected to determine the question of minority simply from the appearance of the customer; but we cannot see that this particular method of determining the question of minority has any legal significance, except as bearing upon the good faith of the master or of the servant. If the clerks had been instructed not to be satisfied with the personal appearance of the customer, but in all cases to put a direct inquiry as to his age, or even to require further evidence, mistakes might nevertheless be made, although in such cases the clerks would still be carrying on the master's business in the way prescribed by the master. If the clerks are permitted to be satisfied with a slight test, this indeed would be a proper subject for consideration in determining whether the instructions not to sell to minors were given and acted upon in good faith. But in the present case, the instructions to the jury allowed them to convict the defendant, even though the jury should find that he had in good faith given instructions not to sell to minors, and though the clerk in good faith endeavored and intended to follow those instructions, but had innocently made a mistake in judging of the purchaser's age from her appearance. The question was not submitted to the jury to determine, as a matter of fact, whether the permitted mode of determining the age was a reasonable one or not, or whether it indicated bad faith or negligence on the part of the defendant in the mode of conducting his business. That might have been proper for their consideration, but it cannot be affirmed as matter of law that the test was unreasonable, or that it indicated bad faith or negligence. The court cannot lay it down as a rule for the guidance of the jury that the master ought to require further evidence. In many cases, perhaps in most, a mere inspection of the purchaser might be sufficient. *Commonwealth* v. *Emmons*, 98 Mass. 6.

While a broader rule prevails in respect to a master's civil responsibility for the acts of his servant or agent, ordinarily he is not held responsible criminally unless he in some way participates in, countenances, or approves the criminal act of his servant. Ordinarily, if a servant does a criminal act in opposition to the master's will and against his orders, though by mistake, the master cannot be held criminally responsible. This rule is of general application, though subject to some real or apparent exceptions. *Commonwealth* v. *Nichols*, 10 Met. 259. *Commonwealth* v. *Wachendorf*, 141 Mass. 270. *Commonwealth* v. *Briant*, 142 Mass. 463. *Commonwealth* v. *Stevenson*, 142 Mass. 466. *Commonwealth* v. *Hayes*, 145 Mass. 289, 295. *State* v. *Smith*, 10 R. I. 258. *Anderson* v. *State*, 22 Ohio St. 305. This rule has been held applicable to cases of sales to drunkards and slaves. *Barnes* v. *State*, 19 Conn. 398. *State* v. *Dawson*, 2 Bay, 360. *Hipp* v. *State*, 5 Blackf. 149. The case of *Commonwealth* v. *Uhrig*, 138 Mass. 492, does not go so far as to hold that one may be convicted of an illegal sale for the unauthorized act of his servant, but only that after such sale by his servant he may be convicted of keeping a liquor nuisance. This, of course, is because he is responsible for the character of the place kept by him. But even in respect to this doctrine, it is necessary to bear in mind the limitations indicated by other decisions. *Commonwealth* v. *Patterson*, 138 Mass. 498. *Commonwealth* v. *Hayes*, 150 Mass. 506. *Commonwealth* v. *Hayden*, 150 Mass. 332.

There are some criminal and some penal cases which perhaps may be deemed to be exceptions to the general rule. The usual illustrations are indictments for libel or nuisance, and informations and complaints for the breach of statutory regulations for securing public order; and it is obvious that in some of these instances criminal responsibility is imposed for carelessness or negligence on the part of the master. In *Commonwealth* v. *Morgan*, 107 Mass. 199, 203, which was an indictment for libel, this court said: "Criminal responsibility on the part of the principal, for the act of his agent or servant in the course of his employment, implies some degree of moral guilt or delinquency, manifested either by direct participation in or assent to the act, or by want of proper care and oversight, or other negligence in reference to the business which he has thus intrusted

to another." See also *The Queen* v. *Holbrook*, 3 Q. B. D. 60, and 4 Q. B. D. 42, involving a construction of the English statute respecting libel. Several English cases of informations for penalties are collected in Smith's Master and Servant, (4th ed.) 312 *et seq.*, which have the appearance of trenching somewhat upon the general rule, unless fairly distinguishable upon the ground there stated, that they partake more of the nature of civil proceedings to recover a debt due to the Crown. For a case of public nuisance, where the master was held criminally responsible for his servant's acts, see *The Queen* v. *Stephens*, L. R. 1 Q. B. 702.

Without dwelling upon cases like these further than merely to show that they have not been overlooked, it does not appear to us necessary or reasonable to extend criminal responsibility for the act of a servant so far as to include a case like the present. The servant himself is no doubt responsible, because he has made a sale, however innocently, which the law forbade him to make. But if he reasonably and honestly believed the purchaser to be of adult age, and that the sale might lawfully be made, his statutory guilt should not be imputed to the defendant. Though the defendant would have been responsible for his own mistake, if the sale to the minor had been made by him, it seems to us to be carrying the doctrine of criminal responsibility for the act of another quite too far to convict him by reason of an honest mistake on the part of his clerk, provided the jury should find that the master sincerely and honestly intended that his instructions should be followed in good faith, and that he was not negligent or careless in the selection of his clerks, or in the regulations and precautions which he prescribed for their guidance. See *Mullins* v. *Collins*, L. R. 9 Q. B. 292, per Quain, J., and also per Blackburn, J.

The testimony of Palmer as to the number of sales of intoxicating liquors registered on the defendant's books within a fortnight of the alleged sale was competent to be considered, as bearing upon the question of the reasonableness of the precautions taken by the defendant to prevent sales to minors.

*Exceptions sustained.*