FERNANDO SIERRA BERDECÍA, ETC., Plaintiff and Appellant,
v. EASTERN SUGAR ASSOCIATES, Defendant and Appellee.

No. 10270.   Argued November 6, 1950.—Decided November 28, 1950.

*Ramón Cancio, Joaquín Gallart Mendía,* and *Augusto Palmer,* counsel for the Department of Labor, for appellant. *E. T. Fiddler, José G. González, Tomás I. Nido,* and *Andrés Guillemard,* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Evaristo García Rivera and Flor Rivera Mestre filed a claim for wages in the District Court of Humacao against Jesús María Rivera. The case was heard on its merits and the court rendered judgment for the defendant on the ground that the evidence did not prove that the claimants had worked the alleged extra hours for defendant but for the Eastern Sugar Associates (A Trust).[1] Ten days later, the Commissioner of Labor, in representation and on behalf of the workers, filed a similar complaint against Eastern. He substantially alleged that Evaristo García Rivera and Flor Rivera Mestre worked for respondent as crane operator and car loader respectively in a crane that respondent operated in its industry of sugar cane production in the place known as Irurena, in Humacao, from February 6, 1946 to May 8 of the same year; that six days a week said workers worked for 12 hours daily, that is, four hours over the maximum work-

---

[1] We shall hereinafter designate respondent in the course of this opinion merely as Eastern.

ing day of eight hours allowed by the Act; that said workers received for said work a compensation of 28.12 cents for each regular hour of work; that García Rivera worked a total of 292 extra hours and Rivera Mestre a total of 228 extra hours for which none of them ever received compensation; and that the complaint is based on Mandatory Decree No. 3 of the Minimum Wage Board of Puerto Rico and under the special proceeding established by Act No. 10 of November 14, 1917. It is requested in the appeal that judgment be rendered ordering Eastern to pay said workers double compensation for the extra hours worked, plus the additional penalty fixed by the Act.

Respondent answered admitting that said workers had worked for it in said crane during the grinding season of 1946 and on the alleged dates; it denied the remaining facts of the complaint and alleged affirmatively that said workmen worked for it only during eight regular hours daily and that if they worked over those hours on any day they did so for the benefit and at the request of another person. Likewise it alleged in its answer, on information and belief, that the claimants worked in the operation and transfer of sugar cane for *colono* Jesús María Rivera Donato, and that they filed their claim originally against said *colono* because they believed that it was his duty to pay them and it was not until he arbitrarily refused to pay them for said hours that they appealed against it.

The issue being thus joined the case was heard. The District Court of Humacao, speaking through a different judge from the one that had dismissed the complaint brought by these same claimants against Jesús María Rivera, rendered judgment to the effect that the workmen had worked those extra hours at the request and for the benefit of Jesús María Rivera; that since Rivera was merely a *colono* of the Eastern and not its agent, middleman, representative or employee, his actions were not binding on it; and that respondent was not liable for the additional hours worked by the

claimant workers since said extra hours had been worked at the request and for the benefit of a different employer, that is, Jesús María Rivera and against the express will of respondent. The lower court further indicated that although the evidence proved that claimants had worked an additional number of hours over the maximum eight-hour working day permitted by the Act during six days a week, on a wage of $2.25 for each eight hours worked, nevertheless, since the total number of extra hours could not be determined by the evidence brought, the courts were not justified in granting claims for wages which were not duly proved. Consequently, it dismissed the complaint.

Plaintiff appealed from this judgment. He assigns in support of his complaint that the court *a quo* erred (1) in deciding that respondent was not liable for the payment of the wages corresponding to the hours worked by claimant in excess of the legal eight-hour working day and (2) in deciding the case without estimating the time worked by the workmen in excess of the regular eight-hour working day. The errors thus assigned compel us to determine whether the district court correctly weighed the evidence, and consequently, if it was proved: (*a*) that the extra hours worked by the afore-mentioned workers were for the account of and benefit of respondent; and (*b*) the number of extra hours worked by the claimants.

The oral evidence brought in favor of the workers consisted in the testimony of Evaristo García Rivera, Dionisio Rivera, Enrique Torres Irizarry, José Lugo Matta, Juan Colón Salcedo and Alejandro de León. In order to appreciate the import of the evidence presented, we shall briefly summarize the testimony of each witness:

*Evaristo García Rivera* worked during the grinding season of 1946 as crane operator in the place known as Irurena, belonging to Eastern, 12 hours daily, starting his work at seven in the morning and finishing it from eight to nine in the evening. There were times when he was through at ten

o'clock at night He worked six days a week for a wage of $2.25 for eight hours. Pepe Lugo, the manager, knew it. When it was very late Lugo would send an employee to get him. They used to tell him that "the Eastern paid eight hours. That that was working overtime". The crane and its motor belonged to Eastern, which also controlled the motor. When he finished his job he used to go to Eastern office to inform the license plates of the trucks and the packages carried, and to get the order for gasoline. He was received there by Alejandro, the clerk for Eastern. The latter paid the wages to the witness, his name was included in its pay rolls and they were covered by its insurance. The *colonos* had been assigned 60 tons of sugar cane daily, according to Jesús María Rivera. He filed a claim for wages against Rivera for the extra hours because Rivera had brought him to work but he does not know what transaction existed between Rivera and Eastern. Rivera was the one who told him to work the extra hours. He stated to Eastern the reason why he worked overtime, but it made no decision.[2]

*Dionisio Rivera* is the son of *colono* Jesús María Rivera. The two claimant workers worked for Eastern in Irurena. They loaded sugar cane for his father and for other *colonos*. There they worked extra hours sometimes. The workers were selected by the *colonos* by order of Eastern and their salaries were paid by respondent. Their work was supervised by employees of Eastern; and Eastern was liable for carting the sugar cane from the place of delivery to the sugar factory. He never gave orders to said workers nor did he require them to work over eight hours.

*Enrique Torres Irizarry* is supervisor of investigations of labor laws and he reported a claim for extra hours made by García Rivera and by Rivera Mestre.

---

[2] It was stipulated that worker Flor Rivera Mestre would testify the same as Evaristo García Rivera, as well as that Juan Colón Salcedo, José Lugo Matta and Alejandro de León would be called as witnesses for both parties.

*José Lugo Matta* was Head of the Second Field Division of Eastern during the grinding season of 1946. He knows Evaristo García Rivera and Flor Rivera Mestre and he is certain that one worked as motorman and the other as car loader. Eastern paid these workers for loading the sugar cane of *colono* Jesús María Rivera, although they may have worked sometimes in loading sugar cane belonging to other *colonos*. He saw said workers working and noticed that sometimes they stayed after four o'clock in the afternoon. When asked, and at eight o'clock in the evening?, he answered: "Perhaps sometimes". He called their attention several times and told them, "that they knew they only had to work eight hours. That the company could not pay more than eight hours . . . the company paid them for eight hours of work daily". The crane and the motor belonged to Eastern and the latter provided the fuel used by the motor. Questioned if the workers "had specific instructions concerning the hours", he answered: "No, Sir". He stated, besides, that García Rivera and Rivera Mestre appeared in the pay roll of Eastern and that its insurance covered said workers. Questioned, likewise: "when you were informed that these employees worked extra hours, what steps did you take to prevent it?" He replied: "I told them that they could not work more than eight hours and that if they worked them it was their private agreement with the *colono*. But that we had nothing to do with that matter." He also testified that the only action Eastern took was to advise the workers that they should not work over eight hours and that "we always have the best intention to cooperate with the *colonos* and if the workers want to cooperate with the *colonos* we could not help it."

*Juan Colón Salcedo* was in charge of the pay roll of Eastern during the grinding season of 1946 and he knows that García Rivera and Rivera Mestre had worked sometimes over eight hours. Sometimes they worked over 12 hours but he does not know exactly how many extra hours they worked.

The workers told him that it was an arrangement with the *colono* and that they would come to an understanding with him.

*Alejandro de León* was in charge of the office of planting of the second Field Division and in the mornings he ordered that certain amount of gasoline be delivered to the claimant workers.

A certified copy of the Resolution passed by the Public Service Commission on August 6, 1946, to the effect that the hauling and gathering of the cane of the *colonos* from the crane to the sugar factory devolved exclusively on the respondent, was also offered and admitted as evidence.

This was the evidence introduced. As a result of its weighing, we repeat, the court dismissed the complaint because it had not been proved that the extra hours were worked on account of and for the benefit of Eastern and because the number of extra hours worked had not been proved.

■■ We have repeatedly said that the weighing of the evidence by a lower court shall not be altered by us unless we are convinced that in doing so it committed manifest error or acted moved by passion, prejudice or partiality. We have read the transcript of the evidence with the greatest detail unconcernedly and objectively. We have already sketched it briefly. That study has convinced us that the court committed manifest error in reaching such conclusions. The evidence in our opinion shows without any doubt, that the claimants worked for respondent in excess of the eight-hour working day which is mentioned in subdivision 4 (*a*), paragraph A, of the Wherefore of Mandatory Decree No. 3 of the Minimum Wage Board, "fixing minimum wages, maximum hours of work and working conditions which must prevail in the sugar cane industry in Puerto Rico," promulgated on February 27, 1943;[3] that Eastern had full

---

[3] Mandatory Decree No. 3 was promulgated in accordance with the provisions of § 6 of Minimum Wage Act No. 8 of April 5, 1941, (pp. 302, 310).

knowledge of the fact that said workmen worked more than eight hours and that although Lugo Matta, its official, informed the workers that they should not work over eight hours and that Eastern would not be liable for any work over that number of hours, nevertheless, the workers continued working the extra hours with the approval and acquiescence of Eastern, which permitted that its crane, its motor and its fuel be used during the extra working hours and whose officer stated, as we have already said, that "we always have the best intention to cooperate with the *colonos*". Under these circumstances it is inevitable to conclude that the claimants worked the extra hours not for another employer but for respondent.

As said in *Lenroot* v. *Interstate Bakeries Corporation*, 146 F. 2d 325 (1945), "As pointed out by Judge Cardozo in *People* v. *Sheffield Farms-Slawson-Decker Co.*, 225 N.Y. 25, 121 N.E. 474, 476, the mandate of the statute is directed to the employer and 'he may not escape it by delegating it to others.' The 'duty rests on the employer to inquire into the conditions prevailing in his business. He does not rid himself of that duty because the extent of the business may preclude his personal supervision, and compel reliance on subordinates. He must then stand or fall with those whom he selects to act for him . . . the duty must be held personal, or we nullify the statute . . .' 'The cases must be rare where prohibited work can be done within the plant, and knowledge or the consequences of knowledge avoided.' " [4] The aforesaid words applied to criminal prosecutions are equally applicable where the employer who has committed violations seeks excuse from civil restraint. The first error assigned was committed.

---

[4] Although the afore-mentioned words of Judge Cardozo were said in a case involving child labor they were repeated by the Federal District Court of the Southern District of Iowa in *Kappler* v. *Republic Pictures Corporation*, 59 F. Supp. 112, 116, which also involves a claim for extra hours.

840

■ On the other hand, it clearly appears from the testimony of Evaristo García Rivera [5] that he worked for respondent 12 hours a day during six days a week. His testimony is uncontradicted in the record. Hence, since respondent accepted the second allegation of the complaint to the effect that Evaristo García Rivera and Flor Rivera Mestre worked for it as crane operator and car loader respectively, in the place known as Irurena, from February 6, 1946 to May 8 of the same year, it was likewise an error of the court a quo to conclude that although said workers had worked an additional number of hours, the number of extra hours had not been determined. Thus, the second error assigned was likewise committed.

■ There is no doubt that in cases of this nature it concerns the worker to prove by a preponderance of the evidence, not only that he worked in excess of the regular working day, but also the number of extra hours worked by him. Vélez v. Royal Bank, 65 P.R.R. 912, 916. However, see Anderson v. Mt. Clemens Pottery Co., 328 U. S. 680, in which it was said on p. 686 that "An employee who brings suit under § 16(b) of the Act for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated. The remedial nature of this statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee. . . . In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with

---

[5] It should be borne in mind that there is a stipulation to the effect that if Rivera Mestre would testify his testimony would be similar to García Rivera's.

evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate. See Note, 43 Col. L. Rev. 355."

In the present case it is unquestionable that the evidence produced by the claimant workers fully complied with these requisites.

■ As provided by subdivision 4(a) of paragraph A of the Wherefore of Mandatory Decree No. 3 that "no employer will hire an agricultural worker in the sugar cane industry for more than eight (8) hours in a period of twenty-four (24) unless said worker receive compensation for his work in excess of said eight (8) hours at double time the minimum wage applicable . . ." the claimant workers are entitled to obtain judgment ordering respondent to pay them double time and at the rate agreed, the extra hours claimed by them with the penalty fixed by § 25 of Act No. 8 of 1941, *supra*, as amended by Act No. 217 of May 11, 1945 (pp. 680, 700) plus costs.

The judgment appealed from will be reversed and another rendered in harmony with the terms of this opinion.